Mr. Chief Justice Watkins delivered the opinion of the Court. This was an action of assumpsit upon judgments rendered in another State. The declaration alleged that the administrator' and the administratrix of one William Toomhs, deceased, had recovered two judgments in the Circuit Court of Copiah county, in the State of Mississippi, against the defendant. The judgments are set out, successively, with the usual certainty of description, but no proferí is made of the records. The declaration is made to state that the administrator resigned and was duly discharged as such, by the Probate Court of Copiah county, having jurisdiction and authority in respect thereof:- and that “after-wards, to wit: at a term of the Probate Court within and for said county of Copiah, begun and held at the court-house in and for said county, on the 3d Monday in March, 1849, upon petition verified by affidavit, as by law in such case provided, and presented by said Elizabeth, administratrix as aforesaid, it was by said Probate Court ordered and decreed that she, as administratrix, should sell for cash the two judgments aforesaid so recovered against said defendant, and the said Elizabeth, as such adminis-tratrix, by virtue of and in obedience to the right, power and authority, by law and the order and decree of said Probate Court, so as aforesaid made and entered, did regularly give notice as required by law in such case, of the time and place of sale, and in accordance with said notice, did, on the 16th day of April, A. D. 1849, expose said judgments to sale to the highest bidder, at which sale said plaintiff became the purchaser of each of said judgments, and the said Elizabeth, as such administratrix, on the 21st day of May, A. D. 1849, transferred and conveyed said two judgments to the said plaintiff at the said county of Copiah, &c., which said sale was by the Probate Court aforesaid confirmed,of all which the said defendant at, dec., had notice:” that the two judgments remain wholly unsatisfied, and that by means of the premises, the defendant became liable to pay to the plaintiff the amount thereof on request, and being so liable he undertook and promised, &c., with the usual conclusion and breach in as-sumpsit. /'The defendant demurred to the declaration because the action was assumpsit when it should have been debt; and for the want of proferí of the record of the judgments. The court adjudged the declaration insufficient, and the plaintiff declining to amend, final judgment was entered against him. The conclusive effect of a domestic judgment, as between the parties to it, or their privies at the common law, can not be questioned. In a scire facias or action upon it, whatever was determined by the former adjudication, must ever remain so, and the defendant could only deny the existence of the judgment, by pleading that there is no such record, or avoid it by some matter of defence arising subsequent to its rendition. No rule of law has a firmer foundation upon grounds of public policy than this, to the end that litigation may cease. According to the ancient and well established rules of pleading at the common law, debt was-the only action that could be maintained upon a domestic judgment of record. That was deemed an obligation of so high and solemn a nature that no action would lie against the judgment debtor, upon a promise, however express, to pay it. Upon the plea of nul tiel record, the only question was to be determined by the court upon, inspection, whether there is such a record. So in the action of debt or covenant, upon a contract under seal, the suit was founded directly upon the evidence of the contract, which the defendant could only deny under the plea of non est■ factum. Until recently, in England, nil debet was the appropriate general issue in the action of debt upon all contracts not under seal. On the other hand, the effect to be given to foreign judgments, when sued upon in England, has ever been unsettled. They were treated as prima facie evidence only of liability, and the defendant was not concluded by them from a re-examination of the matters there litigated; Assumpsit was the appropriate remedy upon a foreign judgment, and though debt was maintainable, in either case, the statement of the judgment was the consideration, and the inducement for the promise or liability of the defendant. The distinctions here adverted to, had become firmly engraf-ted upon the law of the American colonies before the confederation, and the framers of the federal constitution, in contemplation of the close political union between the States, and to avoid the inconveniences which had been sought to be remedied by a similar provision in the articles of confederation, provided that fall faith and credit should be given in each State to the public acts, records and judicial proceedings of every other State; and that Congress might by general laws prescribe the manner in which such acts, records and proceedings should be proved, and the effect thereof. The act of 1790 provides that such records and exemplifications, when authenticated as prescribed by it, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence the same are or shall be taken. When, upon the construction of the act of Congress, it was decided in Bizzell vs. Briggs, (9 Mass. 462,) and Mills vs. Duryee, (7 Cranch 481,) ever since followed in all the federal and State courts, that nil debet could not be pleaded in an action of debt founded upon a judgment rendered in another State, it was because matter of substance had became inseparably bound up in the forms of pleading. For the same reason, assumpsit will not lie on a judgment of record in another State. (Andrews v. Montgomery, 19 John. 162. India Rubber Co. vs. Hoit, 14 Verm. 92. Garland vs. Tucker, 1 Bibb 361.) In Hubbell vs Coadrey, (5 John. 132,) since overruled in all other respects, and no longer a case of authority, a contrary opinion was intimated; and in Shumway vs. Stillman, (6 Wend. 447.) the action was assumpsit, but no question as to the propriety of that form of action appears to have been raised. Certainly it is not meant that substance is subordinate to form; but while those forms exist, experience has shown the wisdom of adhering to them, as the means of giving effect to the intention of the act of Congress. Conceding that a judgment rendered in one State is valid, and that the co art fairly acquired jurisdiction of the person of the defendant, the obligation rests upon the courts of every other State to give it the same faith and credit, when authenticated to them, in order to enforce it as a cause of action, as would be given to it in the courts of the State where it was rendered. But the manner of enforcing it, the form of the remedy, is governed by our own laws. If by a sweeping law reform, so called, in this State all distinctions between the different actions should be abolished, and the system of pleading reduced to the complaint, answer, and reply, such a change could not impair the rights of the plaintiff, but he would have to conform to it, in pursuing his remedy. And so, if by the law of Mississippi, assumpsit were the proper form of action upon a judgment, it would by no means follow that it could be maintained here, where the common law distinctions in pleading remain unchanged. An illustration of this is afforded by our statute, which enacts that the defendant, sued upon any contract in writing, whether under seal or not, shall not be permitted to deny the execution of the same except by plea under oath. No change is made in the form of the action or in the form of the plea, but the statute requires that, according as non assumpsit, nil debet, or non est factum, may be the appropriate plea, it must be sworn to in order to put the plaintiff on proof of the execution of the instrument. If we could suppose that the legislature of Mississippi had undertaken to do so unusual and improbable a thing (see Wilson v. McElroy, 2 Smedes Marsh. 241) as to make judgments in that State assignable by .any contract not a part of the record itself, so as to vest the legal title to the recovery in the assignee, and enable him to bring an action upon it in his own name, there is no comity which would require us, in respecting his right, to change the form of the remedy given by the law of the forum. There would be less reason for it than there would be to allow the assignee of a writing obligatory to maintain assumpsit. But the demurrer here does not confess that such is the law of Mississippi. The most that can be made of the allegations above quoted from the declaration, is that, by the law of that State, an administrator may be authorized, by the order of the probate court, to sell judgments belonging to the estate. As such evidences of debt have not in their nature any assignable or negotiable quality at law, in the absence of any express averment of what is the law of that State, it must be intended that the transfer alleged to have been executed by the administratrix to the plaintiff, passed only the equitable interest in the judgments, which our courts of law will protect; (Weir vs. Pennington, 6 Eng. 745;) and which, if need be, for want of a competent plaintiff to sue at law, a court of chancery would enforce, as has been done since the judgment of forfeiture against the Real Estate Bank, for the collection of judgments rendered in her favor and which had been assigned to trustees. Without enlarging upon other reasons that might be given, we are satisfied that the judgment in this case is right, and ought to be affirmed.